## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Trisha Von Ruden, Alexa Langreck, Diane Redsten, | Court File No. 22-cv-1757 |
| *Plaintiffs*, | |
| *vs* | **COMPLAINT** |
| The Mayo Clinic, a Minnesota non-profit corporation, Mayo Clinic Health System-La Crosse, a Wisconsin non-stock corporation; and Mayo Clinic Health System-Southwest Wisconsin Region, Inc., a Wisconsin non-stock corporation, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

Plaintiffs Trisha Von Ruden ("Plaintiff Von Ruden"), Alexa Langreck ("Plaintiff Langreck"), Diane Redsten ("Plaintiff Redsten"), (all Plaintiffs collectively "Plaintiffs") make the following allegations for their Complaint against Defendants The Mayo Clinic ("Defendant Mayo"), the Mayo Clinic Health System-La Crosse ("Defendant Mayo La Crosse"), and Mayo Clinic Health System-Southwest Wisconsin Region, Inc. ("Defendant Mayo Southwest Wisconsin") (all Defendants collectively "Defendants").

## INTRODUCTION

1.     In October, 2021, Defendant Mayo mandated that all its employees, including employees of its related corporations Defendant Mayo La Crosse and Defendant Mayo Southwest Wisconsin, receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of the Defendants'

employees, including Plaintiffs, objected to receiving these vaccinations because of their sincerely-held religious beliefs.  Plaintiffs filed requests for a religious exemption with their respective employer Defendant to be exempt from taking the Covid-19 vaccination. Defendants denied the requested religious exemptions.  In addition, Defendants failed to undertake an individual interactive process with any of the Plaintiffs as required for evaluating religious exemption requests.  Defendants terminated each of the Plaintiffs' employment based solely on Plaintiffs refusal to take the Covid-19 vaccine. However, only a couple of months after terminating Plaintiffs, Defendants reversed part of their Vaccine Mandate regarding testing, demonstrating that the terminations of Plaintiffs were either unnecessary or a pretext.

2.     Based on Defendants' implementation of the Vaccine Mandate and their refusal to grant Plaintiffs their requests for religious exemptions, Plaintiffs bring claims under Title VII for religious discrimination, the Americans with Disabilities Act ("ADA") based on the Vaccine Mandate, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

**JURISDICTION AND VENUE**

3.     Plaintiffs have fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the ADA, including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

4.     This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, pursuant to 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.     This Court has personal jurisdiction over Defendant Mayo as it is a Minnesota non-profit corporation operating in and located in the State of Minnesota.

6.     This Court has personal jurisdiction over Defendant Mayo Southwest Wisconsin as it is a Wisconsin non-stock corporation operating in and located in the State of Wisconsin.

7.     This Court has personal jurisdiction over Defendant Mayo La Crosse as it is a Wisconsin non-stock corporation operating in and located in the State of Wisconsin.

8.     Defendant Mayo is subject to the provisions of Title VII and the ADA because Defendant Mayo employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

9.     Defendant Mayo La Crosse is subject to the provisions of Title VII and the ADA because Defendant Mayo La Crosse employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.    Defendant Mayo Southwest Wisconsin is subject to the provisions of Title VII and the ADA because Defendant Mayo Southwest Wisconsin employs more than

fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

11.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and each Defendant conducts business in the State of Minnesota.

## PARTIES

12.     Plaintiff Von Ruden is a Houston County, Minnesota resident who worked for Defendant Mayo La Crosse as a CT technologist.  Plaintiff Von Ruden worked for Defendant Mayo La Crosse for 25 years.

13.     Plaintiff Langreck is a Winona County, Minnesota resident who worked for Defendant Mayo as a registered nurse.  Plaintiff Langreck worked for Defendant Mayo for over two years.

14.     Plaintiff Redsten is a Wisconsin resident who worked for Defendant Mayo Southwest Wisconsin as a registered nurse.  Plaintiff Redsten worked for Defendant Mayo Southwest Wisconsin for approximately 20 years.

15.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

16.     Defendant Mayo La Crosse is a Wisconsin non-stock corporation which operates medical facilities in Wisconsin.

17.     Defendant Mayo Southwest Wisconsin is a Wisconsin non-stock corporation which operates medical facilities in Wisconsin.

**FACTS**

18.     During the pandemic in 2020 and 2021, Plaintiffs were asked to work their own and frequently additional shifts in order to cover the increase in treatment and care for patients during the height of the Covid-19 pandemic.  At that time, Plaintiffs, while unvaccinated, continued to provide patient care or continue working during the pandemic while employed by Defendants.

19.     Defendants recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated.  On September 28, 2021 the President and CEO of Defendant Mayo (Gianrico Farrugia, M.D.), along with the Chief administrative Officer (Jeff Bolton) wrote to Defendant's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day*."

20.     However, just two weeks later, Defendants implemented their Vaccine Mandate for Defendants' employees.  The Vaccine Mandate stated that "all Mayo Clinic staff members" must get vaccinated with one of the Covid-19 vaccines or else the employees would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including remote workers," of which Defendant Mayo had many.  Recognition of the important work performed by the unvaccinated employees disappeared only two weeks after being celebrated.

5

21.     Defendants announced their Vaccine Mandate on October 13, 2021.

Defendants' Vaccine Mandate required all staff to become vaccinated against Covid-19,

and that if such staff were not already vaccinated or only partially vaccinated, they would

have to become vaccinated or be approved for a medical or religious exemption by

December 3, 2021, or be terminated.

22.     On October 25, 2021, Defendants sent a communication to their employees

outlining the steps to comply with the Covid-19 vaccination policy.  Beginning on

December 3, 2021, Defendants issued Final Written Warnings to noncompliant staff with

instructions on complying by January 3, 2022, or be terminated.

23.     Defendants announced that there were both medical and religious

exemptions from the Vaccine Mandate, and did allow for employees to apply for

"*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*"

for such applications.

24.     However, what Defendants gave with one hand, they took away with the

other by proclaiming that "*it is anticipated that a small number of staff will have a*

*qualifying religious exemption*."  (emphasis added)  Defendants further wrote:

"*applications for a religious exemption will be denied if the panel determines the*

*applicant does not demonstrate a sincerely held religious belief*, (emphasis added).

Further, Defendants declared: "*[o]nly a small number of staff are expected to qualify for*

*a religious exemption*." (emphasis added).

25.     Defendants thus put themselves in the position of deciding the sincerity of

the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

26.     Defendants also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for Covid-19 are severe or immediate reaction to a prior dose of the vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles*."  Other medical conditions were preemptively discounted or disregarded.

27.     The pre-determined limitations on their religious and medical exemption policies were supposed to be kept in the dark, as Defendants wrote to the high-ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so please do not share broadly*." (emphasis added).

28.     Consistent with Defendant Mayo La Crosse's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Von Ruden requested a religious exemption from Defendant Mayo La Crosse, which Defendant Mayo La Crosse denied.  Plaintiff Von Ruden also submitted a request for reconsideration from Defendant Mayo La Crosse of its denial of the request for Plaintiff Von Ruden's religious exemption consistent with her beliefs as a follower of Christianity. Defendant Mayo La Crosse denied Plaintiff Von Ruden's request for reconsideration. Defendant Mayo La Crosse did not provide Plaintiff Von Ruden with the criteria it used in evaluating her request for a religious exemption, nor did Defendant Mayo La Crosse provide specific information regarding the reasons for the denial of Plaintiff Von Ruden's request for reconsideration.

29.     Plaintiff Von Ruden is a Christian and believes that each and every human being was created in the image of God, and that her body is a Temple of the Holy Spirit. Accordingly, she must honor God by responsibly caring for her body and controlling what goes into her body.  Plaintiff Von Ruden's Christian religious beliefs dictate that the use of vaccines which used abortion-derived cells in their development, research or testing would constitute her cooperation in the evil of abortion as her religious beliefs provide that abortions are sinful.  Plaintiff Von Ruden cannot in good conscience or consistent with her religious beliefs, take the Covid-19 vaccines as she sincerely believes it would defile her body and be a sin against God.

30.     Plaintiff Von Ruden received numerous positive job performance reviews from Defendant Mayo and almost never missed work.

31.     Plaintiff Von Ruden was 45 years old at the time of her termination and had worked for Mayo for 25 years.

32.     Plaintiff Von Ruden contracted Covid-19 in August 2021 and recovered prior to her termination, which has provided her with natural immunity.

33.     Consistent with Defendant Mayo's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Langreck requested a religious exemption from Defendant Mayo based on Plaintiff Langreck's Christian religious beliefs.  Defendant Mayo denied Plaintiff Langreck's request for a religious exemption.  Plaintiff Langreck also submitted a request for reconsideration from Defendant Mayo of its denial of the request for a religious exemption.  Defendant Mayo denied Plaintiff Langreck's request for reconsideration.  Defendant Mayo did not provide

8

Plaintiff Langreck with the criteria it used in evaluating her request for a religious exemption nor did Defendant Mayo provide specific information regarding the reasons for the denial of Plaintiff Langreck's request for a religious exemption.

34.    Plaintiff Langreck is a Christian who believes her body is a Temple of the Holy Spirit. She believes God gave her conscience to choose how to care for her body. Plaintiff Langreck believes through therapeutic proportionality she must make the assessment of whether the medical interventions outweigh the spiritual and bodily good. Through Christian prayer Plaintiff Langreck discerned she cannot take the Covid-19 vaccine because it would outweigh the spiritual and bodily good. Plaintiff Langreck's Christian beliefs also provide for the sanctity of human life, including that of unborn humans and that abortion is sinful.  Because the available Covid-19 vaccines were produced with or tested with cells from aborted babies, Plaintiff Langreck cannot, consistent with her religious beliefs or conscience, allow the Covid-19 vaccine into her body as it would make Plaintiff Langreck complicit in the abortion of babies.

35.    Plaintiff Langreck received positive job performance reviews from Defendant Mayo, including that she "has been such an outstanding addition to our team on East Tower 9."

36.    Plaintiff Langreck contracted Covid-19 in October 2020 and recovered prior to her termination thereby providing her with natural immunity to Covid-19.

37.    Consistent with Defendant Mayo Southwest Wisconsin's instructions that employees could request a religious exemption to the Covid-19 Vaccine Mandate, Plaintiff Redsten requested a religious exemption from Defendant Mayo Southwest

9

Wisconsin based on Plaintiff Redsten's Christian religious beliefs.  Defendant Mayo

Southwest Wisconsin denied Plaintiff Redsten's request for a religious exemption.

Plaintiff Redsten also submitted a request for reconsideration from Defendant Mayo

Southwest Wisconsin of its denial of the request for a religious exemption.  Defendant

Mayo Southwest Wisconsin denied Plaintiff Redsten's attempt to request reconsideration

of the denial.  Defendant Mayo Southwest Wisconsin did not provide Plaintiff Redsten

with the criteria it used in evaluating her request for a religious exemption nor did

Defendant Mayo Southwest Wisconsin provide specific information regarding the

reasons for the denial of Plaintiff Redsten's request for a religious exemption.

38.     Plaintiff Redsten is a Christian who believes her body was given to her by

God to be treated as a vessel for His service.  Plaintiff Redsten places her trust in God

with her health and decisions related to caring for her body.  Based on Plaintiff Redsten's

prayerful discernment, Plaintiff Redsten's Christian religious beliefs provide that she

cannot put into her body experimental or dangerous chemicals which includes the Covid-

19 vaccines.  Based on her prayer and her study of Scripture, Plaintiff Redsten's Christian

religious beliefs provide that it would be a violation of those religious beliefs for her to

take the Covid-19 vaccine.

39.     Further, Defendant Mayo Southwest Wisconsin granted a number of

religious exemptions to physicians and employees in other positions of greater need,

while Defendant Mayo Southwest Wisconsin denied Plaintiff Redsten's request for a

religious exemption to taking the Covid-19 vaccine.

40.     Plaintiff Redsten received positive job performance reviews from Defendant Mayo. *"Diane recently invested a significant amount of time working compassionately with local resources and the family of an adult child with learning disabilities to find a way to provide mental health counseling and learning disability evaluation for the patient when the family and patient were losing hope of finding any source of funding or insurance coverage. Diane consistently goes above and beyond what would normally be expected of an RN and in this case provided social work and counseling expertise as well to a family, resulting in an excellent outcome. Diane's excellent work and commitment to our patients and team are inspiring."* On March 2, 2018, Plaintiff Redsten received the Service of Excellence – Good Catch Award.

41.     Plaintiff Redsten also made a request for medical exemption to the Vaccine Mandate to Defendant Mayo Southwest Wisconsin due to Plaintiff Redsten being diagnosed with an autoimmune disease.  Defendant Mayo Southwest Wisconsin denied Plaintiff Redsten's request for a medical exemption.

42.     Plaintiff Redsten is familiar with patients and other people who suffered illnesses shortly after receiving the Covid-19 vaccine, including two who suffered strokes or stroke-like symptoms. One co-worker passed away shortly after receiving the vaccine.

43.     After Defendants had told Plaintiffs that Defendants had denied their requests for religious exemptions and requests for reconsideration, Defendants also instructed the Plaintiffs: "*Do not distribute, forward, or copy the content of this notification.*"

44.     Defendant Mayo La Crosse terminated Plaintiff Von Ruden on January 3, 2022.  Plaintiff Von Ruden filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Von Ruden a Right to Sue letter dated April 12, 2022.

45.     Defendant Mayo terminated Plaintiff Langreck on January 3, 2022. Plaintiff Langreck filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Langreck a Right to Sue letter dated April 13, 2022.

46.     Defendant Mayo Southwest Wisconsin terminated Plaintiff Redsten on January 3, 2022.  Plaintiff Redsten filed a charge of discrimination with the EEOC, and the EEOC issued Plaintiff Redsten a Right to Sue letter dated April 19, 2022.

47.     Defendants created an ad hoc panel to review exemption requests for taking the Covid-19 vaccine. As noted above, each of the Plaintiffs submitted requests for an exemption, but Defendants denied nearly every request for religious exemption, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing.

48.     As a result of Defendants' policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including each of the Plaintiffs, who all refused to be injected with the Covid-19 vaccine and whom Defendants terminated as a result.

49.     In issuing the denials for requests for a religious exemption from taking the Covid-19 vaccine, Defendants sent such employees, including Plaintiffs, the same boilerplate language:

"*Thank you for submitting your request for religious exemption. The information you provided was carefully considered. While this may not be the news you were hoping to receive, your religious accommodation has not been approved. Based on the information provided, your request did not meet the criteria for a religious exemption accommodation.*"

50.     Defendants conducted no case-by-case analysis or individualized interactive process to discuss each of the Plaintiff's religious exemption requests or possible accommodation of their religious objections. In response to employee requests for explanation or information regarding Defendants' processes for evaluating religious exemptions requests from employees seeking a religious exemptions to taking the Covid-19 vaccine, Defendants wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision." Rather than engage in a legitimate interactive process, respect the sincerity of its employees', including Plaintiffs', religious beliefs, or attempt any reasonable accommodation, Defendants sent its employees more boilerplate language to justify its pre-determined result:

"*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the Covid-19 vaccine.*"

51.     Defendants actually specifically disavowed an individual interactive process for evaluating requests for a religious exemption to taking the Covid-19 vaccine writing: "Specific feedback on individual requests will not be provided, it is not possible to provide individual feedback."

13

52.     Plaintiffs sought further clarification of Defendants' criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Defendants determining that each of the Plaintiffs did not have a "sincerely held religious belief."  However, Defendants refused to respond to these individual requests for clarification and rather simply sent each of the Plaintiffs the identical generalized language in Defendants' letters.

53.     In their form denial letters, Defendants announced that they would accept appeals of their uniform denial decisions. "*If you would like to submit additional clarifying information, you may submit a reconsideration request here*."  Each of the Plaintiffs took advantage of that process and submitted additional information to Defendants.

54.     Following each of the Plaintiffs' requests for reconsideration of their requests for a religious exemption to taking the Covid-19 vaccine, Defendants again issued identical denial letters to each of the Plaintiffs and nearly every employee who appealed a denial of a request for a religious exemption to taking the Covid-19 vaccine. Defendants' transmittal email messages stated: "*Unfortunately, the additional information you provided did not change the outcome as it did not meet the criteria for a religious accommodation*."  Again, Defendants engaged in no interactive process to evaluate the requests for religious exemptions.

55.     Defendants did not provide information to its employees, including each of the Plaintiffs, about how Defendants determined whether the religious beliefs of those

employees who submitted requests for a religious exemption to taking the Covid-19 vaccine were sincerely held or whether those religious beliefs would be accommodated.

56.     Defendants' original denial of each of the Plaintiffs' requests for a religious exemption and Defendants' denial of each of the Plaintiffs' requests for reconsideration of the denial of their requests for a religious exemption to taking the Covid-19 vaccine contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

57.     Defendants further instructed its employees to *"endorse the vaccine or say nothing."*

58.     Each of the Plaintiffs submitted good-faith statements of their sincerely-held religious beliefs to their respective Defendant employers with explanations of how their faith constrained them from accepting the Covid-19 vaccination.  Defendants' *ad hoc* panel nevertheless denied each of the Plaintiffs' requests for a religious exemption and Defendants made no effort to accommodate their requests for a religious exemption. Further, Defendants never considered allowing Plaintiffs to be accommodated by simply doing their job in the way they had been doing it for over one and one-half years prior to the Vaccine Mandate.

59.     Defendants, in issuing the Vaccine Mandate, instructed that all of their employees must be "fully vaccinated," despite the fact that the phrase "fully vaccinated" has changed from one shot, to two shots, then three shots, then four shots, and even a discussion of a fifth shot or annual shots.

60.     Defendants issued the Vaccine Mandate mandating its employees, including Plaintiffs, take the Covid-19 vaccine despite accumulating evidence that the Covid-19 vaccine does not provide protection as long lasting as had been previously represented, does not prevent infection or transmission, but only allegedly reduces the severity of Covid-19 if a person contracts Covid-19.  A very recent study indicates that people who took the Covid-19 vaccine are actually more likely to be hospitalized than people with natural immunity.

61.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people with Covid-19 were vaccinated to one extent or another.

62.     The numbers of patients hospitalized because of Covid-19 positive status has also been overstated because many were hospitalized for other causes, not because of Covid-19.

63.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendants have done as set forth above.

64.     Early on in the Covid-19 pandemic, and before any vaccines were available, Defendants provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2.*"

65.     Rather than disclosing the results of its determination on the numbers of Defendants' "staff" that "have developed antibodies against SARS-Co-V-2," or

16

disclosing studies on the "duration of immunity after Covid-19," (which some studies have asserted are many times more effective than vaccine immunity), Defendants have not made public this information and instead simply issued its Vaccine Mandate.

66.     On March 8, 2022, Defendants announced it would suspend the testing program portion of its Vaccine Mandate.  As a result, Defendants' remaining unvaccinated employees are now treated similarly to vaccinated employees.

67.     After terminating each of the Plaintiffs, Defendants suspended weekly testing effective March 14, 2022.  This means that employees who would have had their religious exemptions granted, contingent on weekly testing, and were terminated between January 2022 and March 8, 2022, would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendants have now determined was unnecessary.

## FIRST CAUSE OF ACTION

## Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

68.     Plaintiffs restate and reallege paragraphs 1 through 67 as if fully set-forth herein.

69.     Each Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

70.     Each of the Plaintiffs are "employees" within the meaning of 42 U.S.C. § 2000e(f).

71.     Plaintiffs have sincerely held religious beliefs which prevented them from receiving the vaccine.  Plaintiffs' beliefs arise because of their sincerely held religious beliefs.

72.     Each Plaintiff informed his or her respective employer Defendant of the conflict between their religious beliefs and taking the Vaccine Mandate.

73.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

74.     The Act prohibits Defendants from scrutinizing what the Defendants believe to be the sincerity of Plaintiffs' religious beliefs, or whether Plaintiffs' exercise of their beliefs is logical or as consistent as Defendants believe the exercise of those religious beliefs should be.

75.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

76.     In response to Plaintiffs' request for reasonable accommodation of their sincerely-held religious beliefs, Defendants and their ad hoc panel applied a uniform, blanket rule in rejecting Plaintiffs' requests, in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation. The religious exemptions

granted were frequently those of employees with less seniority and therefore at a lower wage.

77.     Despite the Plaintiffs' consistent requests for Defendants to engage in an interactive process regarding their requests for accommodation, Defendants refused throughout to engage in the interactive process and instead rejected Plaintiffs' requests for an exemption for identical reasons as other of the Defendants' employees using an identical form letter.

78.     As set forth above, Defendants could have accommodated Plaintiffs' requests for a religious exemption without suffering any undue hardship by having them continue to do their job the same as they had done for the last one and one-half years of their employment.

79.     Defendants' actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

80.     Because of Defendants' unlawful actions, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA §363A.08
### (Plaintiff Langreck)

81.     Plaintiff Langreck restates and realleges paragraphs 1 through 80 as if fully set-forth herein.

82.     Minn. Stat. §363A.01, et seq. prohibits discrimination in employment based on religion.

83.     Defendant Mayo is an "employer" within the meaning of Minn. Stat. §363A.01.

84.     Plaintiff Langreck ("Minnesota Plaintiff") is an "employee" within the meaning of Minn. Stat. §363A.01.

85.     Plaintiff Langreck has sincerely held religious beliefs which prevented her from receiving the Covid-19 vaccine.

86.     Plaintiff Langreck informed Defendant Mayo of the conflict between Plaintiff Langreck's religious beliefs and the Vaccine Mandate.

87.     Minn. Stat. §363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

88.     Minn. Stat. §363A.01 et seq. prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Langreck's religious beliefs, or whether Plaintiff Langreck's exercise of her beliefs is logical or as consistent as Mayo believes the exercise of those religious beliefs should be.

89.     In response to Plaintiff Langreck's requests for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo's *ad hoc* panels applied a uniform, blanket rule in rejecting Plaintiff Langreck's request, in violation of the law on reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

90. Despite the Plaintiff Langreck's requests for Defendant Mayo to engage in dialogue regarding Plaintiff Langreck's request for a religious exemption, Defendant Mayo refused throughout to engage in the interactive process, and instead Defendant Mayo terminated Plaintiff Langreck for generalized reasons, using an identical form letter.

91. Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. §363A.01 et seq.

92. Because of Defendant Mayo's unlawful actions, Plaintiff Langreck has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

### THIRD CAUSE OF ACTION

**Discrimination and Failure to Accommodate under
the ADA, 42 U.S.C. § 12101 *et seq.***

93. Plaintiffs restate and reallege paragraphs 1 through 92 as if fully set-forth herein.

94. Each Defendant is an "employer" within the meaning of 42 U.S.C. §12111(5)(A).

95. Each of the Plaintiffs was an "employee" of their respective Defendant employer within the meaning of 42 U.S.C. §12111(4).

96.     The ADA, at 42 U.S.C. §12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

97.     Defendants' Vaccine Mandate violated 42 U.S.C. §12112 (d)(4)(a).

98.     As a result of Defendants' actions in violation of the ADA, Plaintiffs suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute
### (Plaintiff Langreck)

99.     Plaintiff Langreck restates and realleges paragraphs 1 through 98 as if fully set-forth herein.

100.    Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id*. §12.39, Subd. 2 (the "Refusal of Treatment" statute).

> "… *individuals* have a f*undamental right* to *refuse* medical treatment, testing, physical or mental examination, *vaccination*, participation in experimental procedures and protocols, …".  *Minn. Stat. §12.39, Subd. 1* (emphasis added).

> Further, "before performing … vaccination of an individual … a *health care provider* shall *notify the individual* of the *right to refuse* the … *vaccination, …*".  *Minn. Stat. §12.39, Subd. 2 (*emphasis added*)*.

101.   Plaintiff Langreck is an "individual" who has a "fundamental right" to "refuse medical treatment" and "vaccinations."

102.   Defendant Mayo is a "health care provider" (*Minn. Stat. §12.39, Subd. 2*), who is obligated to "notify the individual of the right to refuse vaccinations."  Further, the underlying policy applies to "private agencies of every type" (*Minn. Stat. §12.02, Subd. 2*).

103.   The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

104.   Plaintiff Langreck has objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result Plaintiff Langreck's refusal to accede to Defendant Mayo's Vaccine Mandate, Plaintiff Langreck has been harassed, suspended, discharged (explicitly or constructively), and had her earned benefits taken away.

105.   Defendant Mayo's actions in punishing Plaintiff Langreck for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that Covid-19 vaccinations could not be mandatory and must instead be voluntary.

106.   Defendant Mayo partially changed its policy in October, 2021. Subsequently, in March, 2022, Defendant Mayo changed its Vaccine Mandate again to no longer require weekly testing for unvaccinated employees.

107.     As a result of the Defendant Mayo's illegal actions taken against Plaintiff Langreck, Plaintiff Langreck has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

108.     Plaintiffs restate and reallege paragraphs 1 through 107 above as if fully set-forth herein.

109.     Defendants had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

110.     Defendants wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

111.     Defendants' policies and statements created a contract between it and its employees.

112.     Each of the Defendants' actions in terminating the respective Plaintiff who worked for one of the Defendants, discriminating against them on the basis of their religious beliefs, constitutes a breach of that contract.

113.     Plaintiffs have been damaged by Defendants' breach of contract.

114.    In the alternative, Defendants' promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiffs, relied to their detriment. Defendants' promises to its employees, including Plaintiffs, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues for which they have a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs above-named pray for judgment in their favor and against Defendants for an Order of the Court as follows:

1.    Adjudging that Defendants are liable to each of their respective employee Plaintiffs for their actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.    Enjoining Defendants from taking further illegal action against each of the Plaintiffs in violation of both state and federal law, and Ordering each Defendant to take action to restore each of their respective employee Plaintiffs to their positions they would have enjoyed absent Defendants' illegal conduct;

3.    Awarding each of the Plaintiffs their costs, reasonable attorney fees, prejudgment interest, and any other relief permitted by statute; and

4.      Awarding such other relief as the Court may deem just and equitable, including, without limitation, an injunction prohibiting differences in treatment between the vaccinated and unvaccinated which do not heave a scientific basis.

Dated: July 11, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
William F. Mohrman, 168816
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
Email: mohrmanr@mklaw.com
*Attorneys for Plaintiffs*